# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

| | |
|---|---|
| STEVEN McCONNELL, <br><br> **Plaintiff,** <br><br> *vs.* <br><br> CAROLYN W. COLVIN, Commissioner of Social Security, <br><br> **Defendant.** | CAUSE NO. 1:13-cv-1475-RLY-DKL |

## REPORT AND RECOMMENDATION

The plaintiff, Steven McConnell, applied for disability benefits under both the disability-insurance ("DI") and supplemental-security-income ("SSI") programs of the Social Security Act. He brought this suit for judicial review of the defendant Commissioner's denial of his applications. The Honorable Richard L. Young, the assigned district judge, referred this Cause to this magistrate judge for submission of proposed findings and recommended disposition under 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b)(1). *Entry Referring Matter to Magistrate Judge* [doc. 23].

### Standards

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If

1

the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 905. A person will be determined to be disabled only if her impairments "are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of

2

substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. § 423(a)(3)(G).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the applicant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy. At the fourth step, if the applicant has the RFC to perform her past relevant work, then she is not

disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy. 42 U.S.C. § 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

**Background**

After Mr. O'Connell's applications were denied on initial and reconsideration reviews, he requested a hearing before an ALJ. After he requested a hearing, Mr. O'Connell obtained representation by two non-attorney representatives from the law firm that is representing him in this suit. (R. 104, 135.) The hearing was held in May 2012 and Mr. McConnell and a vocational expert testified. Mr. McConnell was represented at

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

the hearing by one of his two non-attorney representatives. The ALJ issued his decision denying both DI and SSI claims that same month. When the Commissioner's Appeals Council denied his request for review of the ALJ's decision, (R. 1), that decision became the Commissioner's final decision on Mr. O'Connell's claims and the one that the Court reviews.

At step one of the sequential evaluation process, the ALJ found that Mr. McConnell has not engaged in substantial gainful activity since his alleged onset date in August 2010.[2] At step two, he found that Mr. McConnell has severe impairments of arthritic changes of the lumbar spine, bulging discs in the lumbar spine, and obesity. He found that Mr. McConnell has non-severe impairments of high blood pressure and depression. At step three, the ALJ found that "[t]here is no evidence that [Mr. McConnell] has a physical impairment or combination of impairments that meet or medically one of the listed impairments . . . , including but not limited to, Listing 1.04A." (R. 20.) The ALJ discussed only listing 1.04A.

For purposes of steps four and five, the ALJ next determined Mr. McConnell's residual functional capacity for work ("RFC"). He found that Mr. McConnell has the RFC for light work with additional exertional, postural, and environmental limitations. As part of his analysis, the ALJ determined the credibility of Mr. McConnell's statements

---

[2] The ALJ also found that Mr. McConnell meets the insured-status requirements for DI benefits through December 31, 2015.

and testimony about the severity of his subjective symptoms and the extent of the functional limitations that they caused. The ALJ found that, while Mr. McConnell's impairments could reasonable be expected to produce the kinds of symptoms that he alleged, his statements about their intensity, persistence, and limiting effects were not entirely credible.

At step four, relying on the testimony of the vocational expert, the ALJ found that Mr. McConnell's RFC would permit him to perform his past relevant work as a furniture assembler and as an offset press operator. He made an alternative finding at step five that, considering Mr. McConnell's age, education, job skills, and RFC, there is a significant number of jobs existing in the national economy that he can perform. Therefore, the ALJ found that Mr. McConnell was not disabled and denied his claims.

Mr. McConnell has arthritic changes in his lumbar spine. Diagnostic images have shown a herniated disc at the L4-5 level, a disc bulge at L3-4, and diffuse bulging or broad-based herniation at the L5-S1 level with a bone spur that might be touching a left nerve root. The L4-5 herniation extends into the left foramen, resulting in a narrowing of the spinal canal. The L5-S1 bulge is without nerve-root compression. He has received various treatments for these conditions, including physical therapy, pain medications, and lumbar epidural steroid injections. At the time of the hearing, a neurosurgeon was scheduling Mr. McConnell for a minimally invasive decompression and fusion of the L4,

L5, and S1 vertebrae. Mr. McConnell also has high blood pressure and he is borderline obese. (R.28.)

Mr. McConnell alleged that he has almost constant (85% of his day) pain in his lower back that radiates down both legs, mostly his right leg. He experiences numbness and prickliness in the same areas and in three fingers of his right hand, swelling in his hands, dizziness with black-out spells. He alleged extensive functional limitations, preventing 90% of what he used to do, (R. 21), and he denied the ability to do most activities of daily living, (R. 62-68). He alleged severe exertional and postural limitations, such as an inability to stand longer than fifteen minutes, walk more than a block, sit for more than thirty minutes. (R. 60.) He alleges that his physical problems (back conditions and high blood pressure) are his primary impairments and work limiters. (R. 56.)

Mr. McConnell also alleges a mental impairment of anxiety and depression that started after he quit working, (R. 68), and for which he takes medication and regularly sees a counselor and a psychiatrist, (R. 59).

Mr. McConnell alleges that the medications he takes for his physical and mental issues render him constantly tired and easily confused. (R. 58, 69-70).

The evidence in the record consists of reports from Union Hospital, whose emergency room Mr. McConnell has visited and where he had some diagnostic tests and epidural injections performed; his primary-care physician, Dr. Spendal; his treating

physiatrist, Dr. Haber; his treating neurologist, Dr. Potts; a social worker at a mental health clinic that he visited twice, Ms. Streigel; and a treating neurosurgeon, Dr. Fulkerson, who is a partner with Dr. Potts. Also included in the record are opinion statements by the state-agency medical reviewers, Dr. Lavallo and Corcoran (adopting Dr. Lavallo's opinion without elaboration); state-agency reviewing psychologist, Dr. Kladder; Dr. Spendal; Ms. Streigel; and nurse practitioner with Dr. Spendal, Ms. Meyer.

## Discussion

Mr. McConnell asserts three errors in the ALJ's decision.

**1. Failure to follow the treating-physician rule.** Mr. McConnell argues that the ALJ erred in not giving controlling weight to the opinions of his primary-care physician, Dr. Spendal, and a nurse practitioner in Dr. Spendal's office, Ms. Meyer. A treating source's opinion on the nature and severity of a claimant's impairments must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2).

**Dr. Spendal.** Mr. McConnell does not identify in his brief the specific opinions of Dr. Spendal to which he contends the ALJ should have given controlling weight and how such weight would affect the ALJ's analysis and conclusions. Thus, he likely forfeits the argument. Alternatively, the Court reviews whether the ALJ failed to give appropriate weight to Dr. Spendal's opinions that the ALJ described and evaluated in his decision.

9

The ALJ addressed some of the opinions that Dr. Spendal recorded on two identical Multiple Impairment Questionnaires that he completed on August 11, 2011, (R. 662), and, nineteen days later, on August 30, 2011, (R. 756). (R. 29.) Mr. McConnell also describes some of those opinions in his brief. (*Plaintiff's Brief in Support of His Complaint* [doc. 16] ("Brief") at 4-5.) The ALJ noted Dr. Spendal's answer to the question about Mr. McConnell's prognosis on the August 11, 2011 questionnaire: "[a]ny expectations regarding return to gainful employment is unlikely." (R. 29, 662.) He also noted Dr. Spendal's answers on both questionnaires about Mr. McConnell's limits on sitting (3 hours), standing/walking (3 hours), changing position (every 20 minutes), lifting (5 pounds frequently, 5 to 20 pounds occasionally, never more), carrying (up to 20 pounds occasionally, never more), and fine manipulation with fingers or hand (no limitation). (R. 29, 664-65, 758-59.) The ALJ noted Dr. Spendal's opinion, recorded on the April 11, 2011 questionnaire, that Mr. McConnell "[c]an not repetitively reach above head & shoulders. Fine dexterity intact but can not maintain upright positioning for long periods of time." (R. 29, 665.)[3] Dr. Spendal opined on both questionnaires that Mr. McConnell is essentially precluded from using his arms for reaching, including overhead, (R. 29, 666, 760), and that he would need to take 5 to 10 unscheduled breaks of 10 to 20 minutes' duration at

---

[3] In his later questionnaire, the ALJ's opinions were not as dire. The inability ("can not") to repetitively reach above head and shoulders was downgraded to "[d]ifficulty [with] repetitive reaching & stretching above head & shoulders." (R. 759.) In addition, the inability to maintain "upright positioning for long periods of time" is not repeated. (*Id.*) Finally, Dr. Spendal added the note, "Now [with] some element of [unknown] spine pain most likely [secondary] to prolonged deconditioning." (*Id.*)

unpredictable intervals during an 8-hour working day. (R. 29, 667, 761.) Finally, the ALJ noted Dr. Spendal's answer on the August 11, 2011 questionnaire that Mr. McConnell would miss work more than three times a month. (R. 29, 668.)[4]

After describing these opinions of Dr. Spendal, the ALJ wrote that he gave them "little weight" because they are not supported by the objective medical evidence. He specified only three unsupported opinions: "There are no indications that **[1]** the claimant could not reach over shoulder height, **[2]** that he would require such frequent break periods, or **[3]** that his ability to sustain employment would be impossible." (R. 29 (bracketed numbers added).)

---

[4] On the later questionnaire, Dr. Spendal reduced his estimate, checking the selection "About two to three times a month." (R. 762.)

The ALJ also wrote that Dr. Spendal opined that Mr. McConnell could only minimally grasp, turn, or twist objects. (R. 29.) However, the ALJ misread Dr. Spendal's response. The questionnaires asked for the "degree of limitation that your patient would have in a **competitive 8 hour workday** using the upper extremities," and Dr. Spendal checked the "Minimal" column on both questionnaires, indicating that Mr. McConnell would have a minimal limitation, not that he could only minimally perform the functions. (R. 665, 759.) In addition, the ALJ mistakenly described Dr. Spendal's opinion to be that Mr. McConnell "could not work in a full time competitive job for a sustained period . . . ." (R. 29.) The pertinent question asked if the patient's condition interferes with the ability to keep the neck in a constant position (*e.g.*, looking at a computer screen, looking down at the desk) and, if so, whether the patient could do a full-time competitive job "that requires that activity on a sustained basis." (R. 666-67, 760-61.) Dr. Spendal did not check either yes or no in answer to the first question on either of the questionnaires. On the August 11, 2011 questionnaire, he wrote "neck position less impeded however sitting for long periods remains a problem," (R. 666), and, on the August 30, 2011 questionnaire, he wrote "not necessarily a completely limited activity", (R. 760). On both questionnaires, however, he checked the "no" option when asked if Mr. McConnell could do a full-time competitive job that required keeping his neck in a constant position, (R. 667, 761), which appears to be inconsistent with his responses indicating that neck positioning was not a major limiting factor. At any rate, his answers did not mean, generally, that Mr. McConnell could not work in a full-time competitive job on a sustained basis.

11

Mr. McConnell argues that Dr. Spendal's opinions are supported by objective evidence because he stated that they were based on an August 2010 CT scan showing an L4-5 herniated disc, point tenderness over the lumbar spine and paraspinal musculature, and discomfort over the anterior left thigh. (*Brief* at 14; R. 662, 756.) However, the questionnaires asked Dr. Spendal to identify the "laboratory and diagnostic test results which demonstrate and/or which support" his *diagnosis*, not his opinions regarding *functional limitations*. (R. 757.) Dr. Spendal's diagnosis was "Multiple disc herniations [with] spinal impingement," (R. 756)[5], and the ALJ accepted that Mr. McConnell has the physical impairments, conditions, and types of pain and other symptoms that Dr. Spendal and Mr. McConnell cite. It was not Dr. Spendal's diagnosis or his interpretation of the cited supporting evidence to which the ALJ accorded little weight; rather, it was Dr. Spendal's opinions regarding Mr. McConnell's disability and his functional limitations caused by those impairments.

Thus, the ALJ was looking for evidence and explanation supporting, not the underlying impairments or diagnoses, but Dr. Spendal's opinions on the degree of resulting functional limitations. A treating source's opinions are due controlling weight only when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and neither Dr. Spendal nor Mr. McConnell cite such clinical and

---

[5] Dr. Spendal did not provide any diagnoses or supporting test results on the identical first questionnaire. (R. 662, 663.)

laboratory diagnostic techniques that support Dr. Spendal's opinions regarding the three functional limitations that the ALJ accorded little weight. Without such support, it appears that Dr. Spendal's opinions were based on Mr. McConnell's subjective reports and complaints of pain and limitations, but Mr. McConnell's credibility is an issue ultimately for the ALJ to determine, after considering all the evidence of record. Therefore, to the extent that Dr. Spendal's opinions regarding Mr. McConnell's reaching ability and need for frequent rest breaks are the result of his crediting Mr. McConnell's subjective complaints and reports, they are not due controlling, or any special, weight. 20 C.F.R. § 404.1527(d); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). Dr. Spendal's third opinion — that "any expectations regarding return to gainful employment is unlikely" — is an opinion about whether Mr. McConnell is disabled, which is also, like credibility, an issue (the ultimate issue) that is reserved to the Commissioner and she is not required to accord any special weight to opinions on that issue from treating sources. 20 C.F.R. § 404.1527(e)(3); S.S.R. 96-5p. The Court also notes that Dr. Spendal's most recent opinion, in his August 30, 2011 questionnaire, was significantly downgraded when he simply responded that Mr. McConnell's prognosis is "Fair." (R. 756.)

**Nurse practitioner Meyer.** Nurse Meyer works in Dr. Spendal's office. Although her opinions are not medical opinions and may not be accorded controlling weight because she is not an acceptable medical source, 20 C.F.R. §§ 404.1513(a), 404.1527(a)(2),

her evidence should be, as all evidence should be, considered by the Commissioner in making her disability decisions, 20 C.F.R. § 404.1513(d)(1); S.S.R. 06-03p. The factors listed in 20 C.F.R. § 404.1527(c) may also be used to inform the evaluation of opinions from other sources as they represent "basic principles" that apply to the consideration of all opinions from medical and non-medical sources. S.S.R. 06-03p.

Nurse Meyer completed the same Multiple Impairment Questionnaire as did Dr. Spendal. (R. 859.) For the most part, she rated Mr. McConnell's functional limitations as the same or worse than Dr. Spendal rated them. The ALJ assigned her opinions "little weight" as well because **(1)** apparently, her opinions were based on Dr. Spendal's treatment notes and records, rather than an independent basis; **(2)** her opinions were not supportive of those given by Dr. Spendal; **(3)** her opinions are not supported by Dr. Spendal's treatment notes, specifically the degree of limitations that she opined; and **(4)** Dr. Spendal did not impose any limitation on Mr. McConnell in his notes. (R. 30.)

Mr. McConnell argues that, **(1)** if the basis for Nurse Meyer's opinions was not clear, then the ALJ should have sought clarification;[6] **(2)** the ALJ's observation that Dr. Spendal's notes do not reflect limitations imposed on Mr. McConnell ignores the fact that treatment notes are not created in anticipation of litigation and, therefore, are not

---

[6] Mr. McConnell specifically argues that, if it was not clear how often Nurse Meyer saw Mr. McConnell or which visits were evaluations by Dr. Spendal or nurse Meyer, then the ALJ should have sought clarification from Nurse Meyer. (*Brief* at 16-17.)

14

expected to contain functional limitations for purposes of disability determination if that was not an issue during treatment; and **(3)** the ALJ should have considered the factors in 20 C.F.R. § 404.1527(c).

Mr. McConnell's arguments are unpersuasive. The ALJ did not find that the basis for Nurse Meyer's opinions was unknown; he found that they were based on the office treatment notes and records and that those notes were made by Dr. Spendal, not nurse Meyer. Mr. McConnell neither asserts nor cite to any evidence showing that Nurse Meyer had an independent basis for her opinions. If, as it appears, her opinions were based on Dr. Spendal's notes and observations, then there is no basis to give her opinions more weight than is given to the opinions of Dr. Spendal, who is an acceptable medical source. The majority of Nurse Meyer's opinions on Mr. McConnell's limitations are the same or more limiting than those found by Dr. Spendal, and she offers no more supporting evidence or explanation for those limitations than Dr. Spendal offered. See 20 C.F.R. § 404.1527(c)(3) (the weight given to opinions depends on the degree to which they provide supporting explanations). The Court has found, above, that no error has been shown in the ALJ's finding of insufficient supporting evidence or explanation for Dr. Spendal's opinions regarding Mr. McConnell's limitations. The Court also found that Mr. McConnell did not err in assigning little weight to Dr. Spendal's opinions that apparently were based on Mr. McConnell's subjective reports and/or that are on issues reserved to the Commissioner. The same evaluations apply to Nurse Meyer's opinions.

Mr. McConnell's argument that the ALJ should have considered the § 1527(c) factors assumes, but does not show, that he failed to do so. The ALJ thoroughly described and evaluated the evidence of record and nurse Meyer's opinions and there is no indication that he failed to consider the appropriate factors. Mr. McConnell has shown no authority that an ALJ is required to specifically articulate his evaluation of each of the factors. Finally, the ALJ's observation that Dr. Spendal's notes do not record the imposition of any functional limitations on Mr. McConnell is not fairly interpreted as a reason, alone, for his rejecting nurse Meyer's opinions. That comment was made immediately after the ALJ's finding that "[a]t no point do [Dr. Spendal's] records support limitations such as those expressed by Nurse Meyer in her Impairment Questionnaire," (R. 30), and, thus, was more a specific illustration of that primary finding. The sufficient grounds that the ALJ had for assigning Nurse Meyer's opinions little weight are not vitiated or called into question by this final observation by the ALJ.

**2. Step-two finding.** Mr. McConnell argues that the ALJ erred when he found, at step two, that Mr. McConnell's mental impairment was not severe. The Court agrees with the Commissioner that the ALJ adequately articulated his evaluation of the severity of Mr. McConnell's mental impairment. Nonetheless, because the ALJ proceeded beyond step-two, any errors at that step are harmless. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010).

**3. Credibility.** Mr. McConnell argues several errors in the ALJ's credibility finding. First, he argues that the fact that the ALJ found that he has the ability to "engage in some sporadic activities of daily living for short periods of time does not contradict any of his allegations or establish the ability to work at a regular job on a sustained basis." (*Brief* at 22.) However, the ALJ found that Mr. McConnell's activities were inconsistent with his testimony that he is generally immobile and severely debilitated. (R. 28.) The ALJ made a credibility determination; he did not find that the evidence of Mr. McConnel's activities proved that he was capable of sustained work. The ALJ cited several inconsistencies between the degree of disability alleged by Mr. McConnell and the evidence in the record of his activities. (R. 21-22, 28.) The ALJ's decision demonstrates that he considered all the evidence, including Mr. McConnell's credibility, in determining that he is not disabled.

Second, Mr. McConnell argues that the ALJ mistakenly wrote that Mr. McConnell admitted at the hearing that he left his last job not because of his functional limitations but because he was laid off, when, in fact, his testimony was that he could no longer perform the job and was admitted to the hospital just a few days later. (*Brief* at 22-23; R. 23.) The ALJ did not cite or discuss this mistake later in his decision, particularly in the section where he articulated his credibility conclusion, and he did not describe it as an inconsistency. There is no indication that this mistake was a significant factor in the ALJ's credibility finding.

Third, Mr. McConnell argues that it is a "gross mischaracterization" for the ALJ to write that Mr. McConnell made minimal attempts at conservative therapies. He asserts that he underwent physical therapy, received multiple heavy narcotics, and had many spinal injections before ultimately undergoing spinal surgery. (*Brief* at 23.) It is not clear whether Mr. McConnell contends that his attempts were not minimal or his therapies were not conservative or both. Regardless, his argument is conclusory. The ALJ's decision demonstrates that he was aware of, and considered, Mr. McConnell's physical therapy, narcotic medications, and spinal injections. The ALJ cited and discussed (1) several instances where Mr. McConnell had cancelled or failed to appear for therapy appointments; (2) reports that he was not taking prescribed medications; (3) that only epidural injections and physical therapy were recommended during most of the period; (4) that a minimally invasive decompression and fusion were recommended (after the hearing) only because Mr. McConnell believed that he had exhausted non-surgical treatments; and (5) that he had undergone only a handful of injections. The ALJ described Mr. McConnell's treatments as conservative and his attempts at an cooperation with treatment as minimal. Mr. McConnell provides no support for finding his descriptions and characterizations to be erroneous.

Finally, Mr. McConnell argues that the ALJ erred by "finding the objective testing to be insufficient." (*Brief* at 23.) The argument ends with the statement of it. There follow descriptions of authorities warning ALJs not to "play doctor" by interpreting raw medical

data especially when making credibility determinations because symptoms can be more severe and have greater functional limitations than can be shown or substantiated solely by objective medical evidence. The Court will not undertake, on its own, to examine the ALJ's decision to find support for Mr. McConnell's argument. The argument is forfeited. In addition, the ALJ's decision amply demonstrates that he did not make his credibility determination "solely on the basis of objective medical evidence." (*Id.*)

Because an ALJs is in the best position to determine a witness's credibility, his credibility determination should be overturned only if it is shown to be "patently wrong." *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004); *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). Mr. McConnell has not shown that the ALJ's credibility determination is patently wrong.

**Conclusion**

Because Plaintiff has not shown that the Commissioner's decision is not supported by substantial evidence or is the result of legal error, this magistrate judge recommends that the Court **AFFIRM** the Commissioner's denial of benefits.

**Notice regarding objections**

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P.

72(b)(3). Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel,* 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:** February 3, 2015

*[signature]*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.